UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SAMUEL E. FULLER,

      Petitioner,

v.                                  Case No.  4:12cv224/RS/CJK

TIMOTHY H. CANNON,[1]

      Respondent.

_____/

ORDER and
REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 18).  Petitioner replied.  (Doc. 21; *see also* Doc. 28).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court

---

[1]Timothy H. Cannon succeeded Michael D. Crews as Secretary (Interim) of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On November 23, 2004, petitioner was charged in Franklin County Circuit Court Case Number 04-CF-202, with the murder of his wife Danielle Fuller.  (Doc. 18, Ex. B).[2]  Petitioner was initially charged by Information with second-degree murder with a firearm, but was later indicted by a grand jury for first-degree premeditated murder with a firearm.  (Exs. B, C).  Following a jury trial held March 14 and 15, 2007, petitioner was found guilty of the lesser offense of second-degree murder with a firearm.  (Exs. D, E).  Petitioner was adjudicated guilty and sentenced to life imprisonment.  (Exs. F, G).  Petitioner, through trial counsel (Rachel Chestnut), filed a notice of appeal (Ex. H), but after retaining and consulting with appellate counsel (Robert Harper), petitioner's appellate counsel filed a motion to dismiss the appeal accompanied by petitioner's sworn, written consent to dismiss the appeal. (Ex. I).  The Florida First District Court of Appeal (First DCA) construed petitioner's motion and consent as a notice of voluntary dismissal, and dismissed petitioner's direct appeal on November 2, 2007.  (Ex. J).

On May 14, 2008, petitioner filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Ex. K1), with a supporting memorandum (Ex. K2).  The state circuit court struck petitioner's Rule 3.850 motion as facially insufficient with leave to amend.  (Ex. M).  Petitioner filed a counseled amended Rule 3.850 motion and memorandum.  (Ex. N1).  The circuit court granted an evidentiary hearing (Ex. P), which was held on March 10, 2010.  (Ex. Q).  The

---

[2]All references to exhibits are to those provided at Doc. 18, unless otherwise noted.

court denied relief at the conclusion of the hearing, stating its reasons on the record. (*Id*.).  A written order followed.  (Ex. S).  Petitioner, still represented by counsel, appealed the denial of postconviction relief.  (Ex. U).  The First DCA per curiam affirmed on March 22, 2011, without a written opinion.  *Fuller v. State*, 57 So. 3d 849 (Fla. 1st DCA 2011) (Table) (copy at Ex. X).  The mandate issued April 7, 2011. (*Id*.).

On May 6, 2009, petitioner placed in the hands of prison officials for mailing to the First DCA a *pro se* state habeas petition alleging ineffective assistance of direct appeal counsel.  (Ex. Y).  The petition was received and docketed by the First DCA on February 15, 2012.  (Ex. Z).  The First DCA per curiam denied the petition on March 8, 2012.  *Fuller v. State*, 84 So.3d 366, 366-67 (Fla. 1st DCA 2012) (copy at Ex. BB).  Petitioner's motion for rehearing was denied on April 11, 2012.  (Ex. Z)

Petitioner filed his federal habeas petition on April 30, 2012.  (Doc. 1, p. 1). The petition raises two grounds for relief:  (1)  ineffective assistance of trial counsel for failing to move to suppress or otherwise challenge the admissibility of petitioner's statements to law enforcement on grounds of involuntariness, and (2) ineffective assistance of appellate counsel for "convincing" petitioner to dismiss his direct appeal when petitioner had a meritorious claim of fundamental error arising from an improper jury instruction.  (Doc. 1, pp. 4-13).

Respondent answers that Ground One is without merit because the state court's denial of relief is consistent with clearly established Supreme Court precedent. Respondent asserts that Ground Two is without merit under *de novo* review.  (Doc. 18, pp. 10-27).

APPLICABLE LEGAL STANDARDS

<u>Section 2254 Standard of Review</u>

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision <u>is</u>

contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272,

1287 (11th Cir. 2011) (*citing Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C.  § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is

implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this

standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Ineffective Assistance of Counsel Standard

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* at 690, 104 S. Ct. at 2066.  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result.  A reasonable probability

is one that sufficiently undermines confidence in the outcome. *Id.* at 694, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.

An ineffective assistance of appellate counsel claim is considered under the two-part test announced in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756 (2000) (holding that *Strickland* is the proper standard for evaluating a claim that appellate counsel was ineffective); *see Smith v. Murray*, 477 U.S. 527, 535-36, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (applying *Strickland* to claim of attorney error on appeal). Petitioner must show (1) appellate counsel's performance was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's unreasonable performance, petitioner would have prevailed on his appeal. *Smith*, 528 U.S. at 285-86.

## DISCUSSION

Ground One          Ineffective Assistance of Trial Counsel for Failing to Move to Suppress Petitioner's Statements to Law Enforcement

Petitioner claims trial counsel Ms. Chestnut was ineffective for failing to move to suppress petitioner's inculpatory statements to law enforcement on grounds of involuntariness. Petitioner's claim involves three statements: (1) petitioner's unrecorded statement, "I think I shot my wife," made to three officers at the Carrabelle Police Station on November 14, 2004, at approximately 6:20 p.m., (2) petitioner's subsequent, audio-recorded statement to two investigators at the Franklin County Sheriff's Office ("FCSO") on November 14, 2004, at approximately 8:35 p.m. and (3) petitioner's second audio-recorded statement to the same investigators at the FCSO on November 15, 2004, at approximately 9:20 a.m. Petitioner's first statement was introduced at trial through the testimony of Carrabelle Police Department

Lieutenant Hamm, FCSO Sergeant Riley and FCSO Deputy Ward.  (Ex. D, pp. 19-49).  The substance of petitioner's two audio-taped statements was introduced at trial through the testimony of John Turner, an investigator with the State Attorney's Office who assisted FCSO Lieutenant Segree with that agency's interviews of petitioner. (Ex. D, pp. 282-301).   Neither the audio-tapes nor the transcripts of petitioner's statements to Turner were introduced at trial.  Transcripts of petitioner's statements were made part of the state court record during petitioner's Rule 3.850 evidentiary hearing.  (Exs. R1, R2).

Petitioner claims his three statements to law enforcement were unknowing and involuntary because he was intoxicated at the time he made them and because his memory of the night of the shooting was severely compromised by his "self-induced black out" from alcohol and prescription drug use.  Petitioner alleges counsel was aware of petitioner's intoxication through her interviews with petitioner, and that counsel was aware of petitioner's compromised memory of the incident through the statements themselves and through counsel's depositions of the investigating officers. Petitioner asserts his statements were the theme of the trial, and that had counsel challenged their admissibility, they would have been excluded and he would not have been convicted of second-degree murder.  (Doc. 1, pp. 4-6).

Respondent concedes petitioner presented this claim to the state court in his Rule 3.850 proceeding, but asserts petitioner is not entitled to federal habeas relief because the state postconviction court's rejection of the claim was based on a reasonable determination of the facts and a reasonable application of the *Strickland* standard.

The state circuit court held an evidentiary hearing on this claim.  (Ex. Q).
Petitioner's counsel called four witnesses:  petitioner, trial counsel Rachel Chestnut,
social worker Joanna Johnson and Dr. Ann McMillan.  The State called no witnesses.
After hearing testimony and argument, the state court denied relief, explaining:

> THE COURT:  . . . It took me a little while to get the sequence of events
> clear and so I think just for the record it's helpful to and very concisely
> set that out.  Based upon a review of the trial transcript and particularly
> of the statements involved essentially we have a sequence of events that
> occurred starting on Friday, November 12, 2004 when this supposed
> birthday party occurred.  According to Mr. Fuller's statements this is the
> last that he remembers.  It's a little confusing because you jump from
> there to Sunday, November 14th is the next part of what we know about.
> And Mr. Fuller on Sunday, November 14th goes in to the police
> department at Carrabelle, which we all know is a very small police
> department, recognized in some places as the smallest police department
> in the state, physically.  But anyway about 6:00 he goes to the police
> department, he goes in and makes some utterances which to me are
> clearly voluntary statements.  And it's clear while he is not in custody,
> and, I mean, you have to have custodial interrogation for Miranda to
> even apply.  There's not even an argument that this is even custodial
> interrogation at the initial part of this.  He says in the presence of three
> officers, Lieutenant Hamm with the Carrabelle Police Department,
> Deputy Riley and Deputy Ward, both with the Franklin County Sheriff's
> Department, I think I shot my wife.  He later tells Lieutenant Hamm that
> he messed up this time.  And he tells them that he'd been there earlier
> about 2:00 that afternoon and then he had come back.  So those are the
> initial statements.
>
> And I think it's important to acknowledge there are three separate
> statements that we're really talking about.  We're talking about the
> initial at Carrabelle Police Department about 6:00 Sunday evening.
> Then the next thing that is happening Lieutenant Hamm carries him to
> the Franklin County Sheriff's Department where he is advised of his
> rights via Miranda from about 7:15 according to the Miranda form.  And

at 8:35 the second statement is taken.  This is what's been marked as Defense Exhibit Number 1.  Again his [sic] is advised of his rights, a taped statement is taken and I mentioned to make sure I was clear on it, the taped statement was not put in in its entirety.  There are certainly some prejudicial statements in the taped statement that initially cause me some concern but those were not put into evidence.  It was simply questioning of Investigator Turner that was used in this instance.  In that statement he indicates that he woke up and his wife was dead.  He did not remember anything since leaving the bar at night and that that was his last memory.  That is at 8:35 on Sunday evening.  And that's about a half hour statement.

The next event that we're talking about is the third statement which occurred on Monday, November 15th starting about 9:20 am. Again this is taped but the tape is not put into evidence.  He is again advised of his Miranda rights and he is again interviewed.  So that's the sequence of events.  Dealing with them in that sequence the Defense contends that Ms. Chestnut [trial counsel] was unreasonable in not filing a motion to suppress those three statements and that the defendant was prejudice[d] as required by *Strickland*.  Essentially they need to show to me that the statements should have been suppressed because if they were not suppressible at this point in time then certainly the defendant was not prejudiced.

As to the first statement, the one initially at the police station. There is not [sic] conceivable argument by which that statement would be suppressed.  He walks in the door, he sought them out.  It is clear that he has made a voluntary statement.  It is clear that he is not under arrest. The police knew nothing about it and the first thing the police knew about anything bad having happened was the defendant telling them I think I shot my wife.  It was clearly – it would have been unreasonable to even assert that those statements should have been suppressed.  There was no legal basis for it and certainly Ms. Chestnut was not ineffective for having failed to suppress those statements.  Had she wasted the Court[']s time by filing such a motion it clearly would have been denied.

The next statement is at 8:35 PM.  It could be said that there would be no harm in filing a motion to suppress.  It is not a situation where the Defense is giving up some tactical advantage by not filing a motion to suppress.  I don't think it was a matter of tactical advantage or not.  But again the question is whether it was unreasonable of her not to file the motion and whether the Defense was prejudiced by that.  This would be the closest of the three decisions.  However, given the testimony of Ms. Chestnut, that she talked to her client and her client indicated that as of that point in time he understood what was going on.  It's not a matter of the client making a legal decision.  It's a matter of the client telling the attorney whether there was some factual basis by which she could assert that she had a basis to suppress it.  Had Mr. Fuller told her, you know, I don't know what was going on Sunday evening, 8:35 I didn't understand what was going on and I don't even remember what happened, that certainly would have been a basis to file a motion.  But when Mr. Fuller tells her which I accept her testimony as opposed to Mr. Fuller's testimony here today that I understood what was going on I don't believe it is unreasonable for an attorney to decline to file a motion for which she does not believe she had a factual basis.

That takes us to the statement on Monday, November 15, 9:20 AM.  There is no conceivable basis – Mr. Fuller has now been in jail since 6:00 the night before, specifically why Investigator Turner says he came back the next day is to make sure that he was not intoxicated in the earlier statement.  There is no basis to believe that on Monday morning that he was still intoxicated.  And so we have the second interview. There is no basis, again Mr. Fuller is advised of his rights by Miranda form.  It's tape recorded.  He's again verbally informed of his rights. There is no conceivable basis to assert that it should have been suppressed.  I have considered the testimony of Doctor McMillan and frankly I don't find doctor McMillan's testimony to be supported by the record.  I've reviewed the statements, she says they're illogical and inconsistent.  That's simply is [sic] not correct based upon my reading of the statements.

Mr. Fuller started out from the first moment saying I don't remember what happened since I woke up with my wife dead beside me. He consistently stuck to that story even under situations where the officers occasionally tried to get him to say something different. His statements are internally consistent. You know, is it logical? I mean, most of what we deal with under criminal cases is not logical. Murder is not logical. But there's not anything that does not make sense in his statements. He's got – his story is that I don't remember what happened since I left the bar Friday night. I woke up and my wife was dead beside me. I don't know of another theory by which she could have been killed other than I did it. That's essentially his story from Sunday at 6:00 until the end of his statement on Monday morning about 10:00. I don't find anything internally inconsistent or illogical as it is played.

So therefore, based upon those findings I do not find that Ms. Chestnut provided ineffective assistance of counsel to Mr. Fuller, nor do I find that Mr. Fuller was prejudice[d] by the claimed lack of emotion [sic, presumably, a motion] at this point in time. The closest decision would have been the Sunday evening 8:35 PM statement. That's the closest statement. If you accept everything that has been presented today and assert that that statement arguably could have been suppressed, which I don't find and I don't think to be the case. But assuming you took out the Sunday evening statement based on what he said to start with on Sunday evening at 6:00 and based upon what he said the following day, Monday morning, November 15th that statement was essentially just a reiteration of what is said in the other two statements. And certainly he would not have been prejudiced by the admission of the second statement. I just mentioned that as an alternative basis. In other words I'm just saying if the court in review should find I'm in error as to the first taped statement, 8:35 PM statement, the failure to have that suppressed would not in any way have [a]ffected this trial.

Frankly I don't think once you get beyond the first statement which says I think I shot my wife the rest of it is really not of great significance other than, you know, elaboration on that theme. And as

> I've indicated there's no conceivable legal basis by which that would
> have been suppressed, therefore, I deny the motion for postconviction
> relief.  I will do a simple order simply stating out [sic] that for the
> reasons as stated on the record the motion is denied.

(Ex. Q, pp. 75-82).  The state circuit court's written order provided:  "Based on the reasons as announced on the record, the Court finds that defendant has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency."  (Ex. S).  The First DCA summarily affirmed.  (Ex. X).

The state court correctly identified *Strickland* as the controlling legal standard, and applied that standard to its factual findings.  The undersigned has carefully reviewed the state court's factual findings in light of the state court record, and concludes they are reasonable.  One of the more significant factual findings is the court's determination that trial counsel Ms. Chestnut's testimony at the evidentiary hearing was credible and petitioner's testimony was not credible.  This court must defer to the state court's credibility determinations.  The Eleventh Circuit has emphasized:

> Determining the credibility of witnesses is the province and function of
> the state courts, not a federal court engaging in habeas review.  Federal
> habeas courts have "no license to redetermine credibility of witnesses
> whose demeanor has been observed by the state trial court, but not by
> them." *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L.
> Ed. 2d 646 (1983).  We consider questions about the credibility and
> demeanor of a witness to be questions of fact.  *See Freund v.
> Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc).  And the
> AEDPA affords a presumption of correctness to a factual determination
> made by a state court; the habeas petitioner has the burden of
> overcoming the presumption of correctness by clear and convincing
> evidence.  28 U.S.C. § 2254(e).

*Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011).

Ms. Chestnut testified that she considered filing a motion to suppress and decided against it, after concluding she had no basis to argue petitioner's statements were involuntary.  Ms. Chestnut's conclusion was based on her review of petitioner's statements, her depositions of the relevant law enforcement officers, her discussions with petitioner concerning the circumstances surrounding his statements, and her legal research.  (Ex. Q, pp. 58-61).  Ms. Chestnut testified:

> Q [Petitioner's postconviction counsel Mr. Harper]:  Did you at any time consider filing a motion to Suppress an[y] or all of his statements?
>
> A [Ms. Chestnut]:  I considered filing a motion.  I looked into the grounds for filing a motion and did not feel there were sufficient grounds to get beyond the voluntariness of his statements.
>
> . . . .
>
> A:  He walked into the [police] station and was not questioned – he walks in the door and starts announcing things to the police officers. There was no questioning involved.  They didn't know why he was there.  He walks in and just starts talking.  As far as the later statements I discussed with Mr. Fuller his state of mind at the time and whether he was intoxicated and did not understand what he was doing and he assured me that, no, he did understand when he talked to Officer Turner and I believe it was Officer Segree and that he understood his statements he was making to them.
>
> . . . .
>
> Q:  Can you – do you remember when you discussed the issue of motion to suppress with Mr. Fuller?
>
> . . . .

A: . . . I think we did discuss, not necessarily filing a motion to suppress but the fact that when I was discussing with him how he came to make those statements whether they were voluntary [–] not about whether they were going to be motions to suppress.

(Ex. Q, pp. 58-60).  Ms. Chestnut continued:

A:  If I were to make an argument that his statements were not voluntary I didn't have anything to argue because he told me his statements, he understood what he was saying at the time and that he was voluntarily making those statements.  So no, I did not feel there was a basis to argue that the statements were not voluntary based on what my client told me.

Q:   Did you – and Mr. Fuller understands the legal definition of voluntary?

A:  I would take my criminal law book over and we would discuss things.  And I would explain to him and read to him and explain to him what the definitions meant of things so yes, I believe he did.

(Ex. Q, p. 63).  Ms. Chestnut testified on cross-examination:

Q [State Attorney]:  Ms. Chestnut, in your review of the court file, the evidence in this case and the applicable case law in your opinion was there any thing to warrant filing a motion to suppress in this case?

A:  No, or I would have filed one.

. . . .

Q:  Did you find any evidence that statements were obtained from the defendant in violation of his 5th amendment rights?

A:  No, I did not.

Q:  Did you find any evidence that law enforcement in their questioning of the defendant violated his Miranda warnings in any way?

A:  No, I did not.

Q:   Based on these findings is that what prompted you to make the decision not to file a motion to suppress?

A:  Yes, it is.

(Ex. Q, pp. 64-65).

After determining the facts, the state court went on to conclude, reasonably, that counsel was not deficient for failing to move to suppress petitioner's first statement to police, because according to all accounts of the statement, including petitioner's, there was no custodial interrogation.  Petitioner decided to go to the police station voluntarily and independently, drove himself to the station, walked through the door and spontaneously announced to the officers he thought he shot his wife, all before the police had any inkling something happened to Mrs. Fuller.  *See Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (holding that before a suspect is subjected to <u>custodial interrogation</u>, law enforcement must apprise the suspect of his "right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.").  "Custodial interrogation requires that the defendant was both 'in custody' and subjected to 'interrogation.'" *United States v. Jackson*, 544 F.3d 351 (1st Cir. 2008) (citations omitted).  "If the defendant is not in custody then [*Miranda* and its progeny] do not apply." *Montejo v. Louisiana*, 556 U.S. 778, 795, 129 S. Ct. 2079, 2090, 173 L. Ed.2d 955 (2009).  Petitioner was neither in custody, nor subjected to interrogation when he spontaneously stated, "I think I shot my wife." *See, e.g., United States v. Phillips*, 812 F.2d 1355, 1360, 1362 (11th Cir. 1987)

(quotation marks omitted) (concluding defendant was not in custody when he made incriminating statements to police, where defendant voluntarily drove himself to police station in response to message left by police officer, was not placed under arrest, was not restrained, and officers did not resort to any sort of physical or psychological pressure to obtain defendant's statement); *see also, e.g., Hillary v. Sec'y for Dep't of Corr*., 294 F. App'x 569, 572-73 (11th Cir. Sept. 26, 2008) (state court reasonably rejected habeas petitioner's claim that counsel was ineffective for failing to move to suppress petitioner's statements to police, where there was no custodial interrogation – petitioner went voluntarily to police station and talked with officers about a search they had conducted in an attempt to secure the return of property they seized).[4]   The state court reasonably concluded that because there was no valid basis to challenge petitioner's first statement as involuntary, petitioner failed to establish deficient performance or prejudice under *Strickland.  See Freeman v. Attorney Gen., Fla.*, , 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Brownlee v. Haley*, 306 F.3d 1043, 1066-67 (11th Cir. 2002) (counsel was not ineffective for failing to raise non-meritorious issue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims he reasonably believes to be of questionable merit); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he

---

[4]The undersigned cites this decision and other unpublished opinions only as persuasive authority and recognizes that the opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.

believed was meritless motion challenging juror selection procedures, where such a motion would not have been successful).

As to petitioner's second and third statements which were almost identical to each other, the state court concluded Ms. Chestnut's decision not to challenge the admissibility of these statements was reasonable in light of:  (1) petitioner's statements to Ms. Chestnut that he fully understood what he was doing when he waived his *Miranda* rights and gave his second and third statements; (2) Investigator Turner's testimony that petitioner did not appear intoxicated at the time he gave his second statement (over two hours after his first statement) and certainly was not intoxicated when he gave his third statement (the morning after spending the night in jail with no intoxicants); and (3) petitioner's statements themselves, which were logical, internally consistent and bore no indicia of intoxication or impairment.[5]  The state court's conclusion is a reasonable application of *Strickland*.  *See Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) ("The reasonableness of a trial counsel's acts . . . depends critically upon what information the client communicated to counsel." (internal quotation marks omitted)); *see also Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1325 (11th Cir. 2002) ("Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate.").

The state court further concluded, reasonably, that petitioner could not establish prejudice, because not only was it very unlikely petitioner's second statement would have been suppressed as involuntary due to intoxication, it was

---

[5]Petitioner stated during his third statement taken the morning of November 15, 2004, that he was not intoxicated when he gave his second statement and that he had not had any alcohol to drink while in jail.  (Ex. R1, pp. 1-2).

certain petitioner's third (and identical) statement would not have been suppressed on grounds of intoxication because petitioner could not have been intoxicated after spending the night in jail.  Petitioner's failure to establish prejudice is buttressed by the state court's additional, well-reasoned conclusion that even if counsel successfully challenged petitioner's second statement, there is no reasonable probability the outcome of petitioner's trial would have been different because petitioner's first and third statements still would have been admitted and the third statement was essentially the same as the second.

The state court did not err at all, much less "so transparently that no fairminded jurist could agree with that court's decision." *Bobby v. Dixon*, — U.S. —, 132 S. Ct. 26, 27, 181 L. Ed. 2d (2011).  The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two          Ineffective Assistance of Appellate Counsel

Petitioner claims appellate counsel was ineffective for "convincing" and "knowingly misleading" petitioner to voluntarily dismiss his direct appeal when there was a meritorious claim of unpreserved fundamental error in the trial court's jury instruction on the lesser offense of manslaughter-by-act.  (Doc. 1, p. 7).  Petitioner asserts he properly exhausted this claim by timely presenting it in his state habeas petition, and that although the First DCA denied the petition as untimely, the First DCA's imposition of the procedural bar was manifestly unjust because petitioner demonstrated he timely delivered the petition to prison officials for mailing. (*Id*., pp. 8-9).  Respondent asserts petitioner is not entitled to federal habeas relief, because even addressing the merits of petitioner's claim in the first instance *de novo*,

petitioner cannot demonstrate he is entitled to relief.  (Doc. 18, pp. 20-27).  This court need not address whether the First DCA's imposition of a procedural bar was adequate to support its judgment, because even giving petitioner the benefit of *de novo* review, his claim fails.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Petitioner claims appellate counsel was ineffective for failing to discover and raise on direct appeal the fundamental error that the trial court's jury instruction on the lesser offense of manslaughter-by-act improperly added the element of intent to kill.  (Doc. 1, pp. 9-13; Doc. 18, Ex. Y).  At petitioner's trial, on March 15, 2007, the trial court gave the following instruction, without objection:

> To prove the crime of manslaughter, the State must prove the following two elements beyond a reasonable doubt.  Number one, Danielle Fuller is dead.  Two, Samuel Fuller intentionally caused the death of Danielle Fuller.  However, the Defendant Samuel Fuller, cannot be guilty of manslaughter if the killing was either excusable or justifiable, as I have previously explained those terms to you.
>
> In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.

(Ex. D, p. 373).  Petitioner concedes the jury instruction tracked the 2007 version of Florida's standard manslaughter-by-act jury instruction.  (Doc. 1, p. 11; *see also* Fla. Std. Jury Instr. (Crim.) 7.7 (2007)).  After the jury returned a guilty verdict for the lesser offense of second-degree murder, petitioner appealed, but voluntarily dismissed his direct appeal on November 2, 2007.  (Exs. I, J).

At the time of petitioner's direct appeal, no Florida appellate court had held that the then standard jury instruction on manslaughter-by-act, as approved by the

Florida Supreme Court, was error, much less fundamental error.  The standard instruction given in petitioner's trial was approved by the Florida Supreme Court and had been in use since 1994.  *See Standard Jury Instructions in Criminal Cases (93-1)*, 636 So.2d 502 (Fla. 1994); *In re Standard Jury Instructions in Criminal Cases - No. 2006-1*, 946 So.2d 1061, 1062 (Fla. 2006).

Some fifteen months <u>after</u> petitioner's direct appeal concluded, the First DCA decided *Montgomery v. State (Montgomery I)*, 70 So.3d 603 (Fla. 1st DCA 2009), on February 12, 2009.  *Montgomery I* held that a jury instruction tracking the language of Florida's 2006 standard jury instruction for manslaughter-by-act (the same jury instruction given in petitioner's case) improperly imposed an additional element (an intent to kill rather than merely an intent to do the act that caused the death of the victim) to the offense of manslaughter-by-act.  The court held further that giving the erroneous instruction as a lesser-included offense of second-degree murder constituted fundamental error because "the jury was prevented from returning a verdict for manslaughter, even though, through its verdict of second-degree murder, it found that Appellant did not intend to kill the victim."  *Montgomery I*, 70 So.3d at 604, 607-08.  In reaching the conclusions that the jury was prevented from returning a verdict of manslaughter and that the erroneous instruction constituted fundamental error, the First DCA relied on *Hankerson v. State*, 831 So.2d 235 (Fla. 1st DCA 2002), a case where the court  found fundamental error in the trial court's inclusion of an element of intent in its jury instruction on aggravated manslaughter as a lesser-included offense of second-degree murder.  *Montgomery I*, 70 So.3d at 607-08.  The court in *Montgomery I* explained:

> In *Hankerson*, we concluded that "[t]he addition of an element regarding a lesser included offense . . . taints the underlying fairness of the entire

proceeding." 831 So.2d at 237. In finding fundamental error, we observed that the jury in *Hankerson* "may not have returned a verdict as to a lesser included offense because it found there was insufficient proof of intent to kill." *Id*. This language applies precisely to the instant case. Appellant has correctly identified the nature of the errors in *Hankerson* and the instant case:

> [I]f the jury found the defendant did not intend to kill, the erroneous instruction effectively precluded the jury from choosing between two possible verdicts: second degree murder or manslaughter by act. Under the erroneous instruction, the jury was directed to pick the greater of these two offenses. . . . Such interference with the jury's deliberative process tainted the underlying fairness of the entire proceeding.

Because the jury in the instant case found that Appellant did not intend to kill the victim, we are constrained, under the authority of *Hankerso*n, to reverse Appellant's conviction for second-degree murder and remand the case for a new trial consistent with this opinion.

*Montgomery*, 70 So.3d at 607-08. The Florida Supreme Court approved the *Montgomery I* decision on April 8, 2010. *Montgomery v. State (Montgomery II)*, 39 So.3d 252 (Fla. 2010).

This time line demonstrates that it was not until <u>after</u> petitioner's direct appeal concluded that the First DCA held that the standard manslaughter-by-act jury instruction was erroneous and that its use qualified as fundamental error. Petitioner nonetheless claims that appellate counsel's failure to anticipate the First DCA's subsequent decision in *Montgomery I* constitutes ineffective assistance. Appellate counsel's failure to anticipate a change in the law concerning the standard jury instruction for manslaughter-by-act is not objectively unreasonable and does not constitute ineffective assistance of counsel. *See Spaziano v. Singletary*, 36 F.3d

1028, 1039 (11th Cir. 1994) ("[W]e have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.") (quotations and alterations omitted); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by *Strickland*, an attorney need not anticipate changes in the law."); *Funchess v. Wainwright*, 772 F.2d 683, 691 (11th Cir. 1985) ("The failure of counsel to anticipate that an otherwise valid jury instruction would later be deemed improper by the state judiciary does not constitute ineffective assistance of counsel.").

Petitioner attempts to overcome this obstacle by arguing that "appellate counsel should have identified the nature of the errors in <u>Hankerson</u> and applied them to the instant case." (Doc. 1, p. 11-12; Doc. 18, Ex. Y). *Hankerson*, however, did not address the manslaughter-by-act instruction given in petitioner's case; rather, it addressed an instruction for aggravated manslaughter. The *Montgomery I* court relied on *Hankerson* not for the proposition that the manslaughter-by-act jury instruction was erroneous, but for the proposition that the nature of the error was fundamental. Petitioner's appellate counsel was not ineffective for failing to anticipate that Florida courts would eventually conclude the standard manslaughter-by-act jury instruction used in petitioner's trial was erroneous. *See, e.g., Pimental v. Fla. Dep't of Corr.*, 560 F. App'x 942 (11th Cir. Mar. 27, 2014) (holding that appellate counsel was not ineffective for failing to argue, based on *Montgomery I* which issued during petitioner's direct appeal, that the manslaughter-by-act jury instruction given at petitioner's trial (the 2008 version) qualified as fundamental error; the 2008 version contained language the 2006 version at issue in *Montgomery I* did not, and it was not until after the conclusion of petitioner's direct appeal that the First DCA held that the 2008 and 2006 versions were not materially different: "Pimental's appellate counsel

was not ineffective for failing to anticipate that Florida courts would eventually come to that conclusion."); *see also Reutter v. Sec'y for Dep't of Corr.*, 232 F. App'x 914, 916-17 (11th Cir. May 11, 2007) (holding that petitioner failed to establish deficient performance where petitioner faulted appellate counsel for failing to raise an issue based on cases which purportedly foreshadowed a subsequent appellate court ruling supporting petitioner's argument).

Petitioner is not entitled to federal habeas relief on Ground Two.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Timothy H. Cannon has been substituted as the respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Samuel Eugene Fuller*, Franklin County, Florida, Circuit Court Case Number 04-CF-202 be DENIED, and the clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 3rd day of December, 2014.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).